1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nancy Lord, MD
Nev Bar No. 6697
1970 N. Leslie Rd., No. 220
Pahrump, NV 89060
775-751-3636
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

**CONCERNED CITIZENS FOR A SAFE
COMMUNITY, AN ASSOCIATION; AND DONNA
COX, DONALD COX, AND CHRISTINA STERN
INDIVIDUALS**

        **Plaintiffs**

   **vs.**

**NYE COUNTY, BOARD OF NYE COUNTY
COMMISSIONERS, JONI EASTLEY, in her
Official Capacity, GARY HOLLIS, in his
Official Capacity, BORASKY, ANDREW
"BUTCH" in his Official Capacity,
PETER LIAKOPOULOS,in his Official
Capacity, and MIDGE CARVER, in her
Official Capacity; CORRECTIONS
CORPORATION OF AMERICA, INC.; OFFICE
OF FEDERAL DETENTION TRUSTEE, and
PAHRUMP ALLIANCE FOR ECONOMIC
DEVELOPMENT (Defendant  ).**

        **Defendant  s**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL CASE**

**NO.2:08-1763-KJD-LRL**

**THIRD AMENDED
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

COMES  NOW  Plaintiffs,  CONCERNED  CITIZENS  FOR  A  SAFE

COMMUNITY, AN ASSOCIATION; and DONNA COX, AN INDIVIDUAL by and

through their undersigned attorney, Nancy Lord, MD, Esq., and

complain for injunctive relief for violations under 42 U.S.C.A.

1

§§ 4321, 4332 and supplemental claims under the Nevada Revised Statutes.

**I.   INTRODUCTION**

1.   This is a civil action for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-76.  The claims arise from Defendant s' violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370d, and the Council on Environmental Quality's guidelines (regulations) implementing NEPA, 40 C.F.R. §§ 1500-1508.  This action is brought under the right of review provision of the APA, 5 U.S.C. § 702.

2.   Plaintiffs seek an order declaring that Defendant s have violated NEPA and enjoining Defendant s and their employees and agents from further action on the proposed detention facility to be located at 2190 Mesquite Ave., formerly known as 2250 East Mesquite Ave., Pahrump, Nevada, and from further action effectuating the Development Agreement signed between Defendant s Corrections Corporation of America ("CCA") and Nye County, Nye County Board of County Commissioners (BOCC), the Office of Federal Detention Trustee ("OFDT"), and Pahrump Alliance for Valley Economic Development ("PAVED").

3.

**II.   PARTIES**

4.   CONCERNED CITIZENS FOR A SAFE COMMUNITY, is an Association of citizens of Pahrump, Nevada; DONNA COX is an Individual and Citizen of Pahrump, Nevada, located in Nye County, Nevada.

5.   Each of the Plaintiff organization and individuals described above has attendees who live and/or work in Pahrump, Nevada and specifically near the site of the proposed facility. Plaintiffs attendees and Individual Plaintiff use nearby national forests for a variety of purposes, including, but not limited to, hiking, backpacking, photography, scientific study, wildlife observation, hunting and fishing. They intend to continue to do so on an ongoing basis in the future. Plaintiff's attendees and Individual Plaintiff derive recreational, spiritual, professional, aesthetic, educational and other benefits and enjoyment from these activities.  Moreover, Plaintiff's attendees and Individual Plaintiffs live in Pahrump Nevada and seek to continue to enjoy the benefits of bright stars at night against a dark desert sky and a peaceful and safe rural community.

6.   Defendant   Board of Nye County Commissioners are the county commissioners for Nye County, Nevada and include JONI EASTLEY, in her Official Capacity as Chairwoman, GARY HOLLIS

3

in his Official Capacity, BUTCH BORASKY in his Official Capacity, PETER LIAKOUPOLIS, in his Official Capacity, and MIDGE CARVER, in her Official Capacity.

7.  Defendant   The CORRECTIONS CORPORATION OF AMERICA, INC., is a corporation located at 10 Burton Hills Boulevard, Nashville, Tennessee 37215 that builds and manages for-profit prison facilities throughout the nation, and has agreed to contract to build such a facility in Pahrump, Nevada in spite of the overwhelming opposition by the citizens of that community.   In accordance with the Development Agreement, CCA is to perform functions that are regularly performed by the Bureau of Prisons, a federal agency, including but not limited to incarcerating, employing, transporting and providing medical care to federal pre-trial detainees who are awaiting trial at the United States District Court in Las Vegas.

8.  Defendant   The OFFICE OF FEDERAL DETENTION TRUSTEE ("OFDT") is part of the Department of Justice and is a federal agency "that achieves efficiencies, effectiveness and operational synergies within the detention and incarceration community by fostering interagency cooperation, mutual understanding, accountability and teamwork.   Established and activated in September 2001 by directive of Congress, the Federal

4

Detention Trustee ensures that Federal agencies involved in detention provide for the safe, secure and humane confinement of persons in the custody of the United States while awaiting trial or immigration proceedings. OFDT's coordination of detention activities includes the effective and efficient expenditure of appropriated funds that are deployed with a consistent approach by federal law enforcement agencies." http://www.usdoj.gov/ofdt/

9.  Defendant P.A.V.E.D., INC., Pahrump Alliance Valley Economic Development, is a Nevada Corporation established on or about September 10, 2007 [Exh 1]; PAVED, INC. is a Nevada Corporation established on or about April 13, 2004 [Exh 2]; P.A.V.E.D., INC. merged into PAVED, INC. effective December 5, 2008, by filing dated March 18, 2009 [Exhs 1 and 2] ("PAVED"). Defendant PAVED was established at the direction of the Town Board of Pahrump as a Town Advisory Board. The function of Defendant PAVED is ostensibly to supervise the economic development of Pahrump but its real purpose was to effectuate the approval of a Development Agreement with CCA to build an OFDT detention center in the middle of Pahrump without knowledge of or input by the citizens of Pahrump, Nevada.

10. Defendant    PAVED has received and continues to receive money from the Town of Pahrump and has at least eight members (Al Balloqui, Laurayne Murray, Charles Gronda, Bill Dolan, Vicky Parker, Phil Huff, Paula Elefante and Victoria Balent) who are or were officials of the Town of Pahrump. Al Balloqui, original Chair of Defendant    PAVED, is now Community Business Development and Ordinance Enforcement for the Town of Pahrump. Defendant    PAVED holds its meetings at the Bob Ruud Community Center, a facility that is owned by the Town of Pahrump and available to private organizations that pay a fee and also provide a Certificate of Liability Insurance, naming the Town of Pahrump as "additionally insured". Defendant    PAVED is neither required to provide a fee nor a Certificate of Liability Insurance to the Town of Pahrump.

**III. JURISDICTION AND VENUE**

11. The court has jurisdiction over all causes of action herein pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) because this action arises under the laws of the United States, including the National Environmental Policy Act, 42 U.S.C. §§ 4321, 4332, et seq.; the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; and the

6

Equal Access to Justice Act, 28 U.S.C. § 2412 et seq.    The relief is authorized pursuant to 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. § 706;  and supplemental jurisdiction over state law claims under 28 USC § 1367.    Jurisdiction and relief are further authorized by Amendments I, freedom of speech, and XIV, due process clause, of the United States Constitution.

12.  Venue is proper in this Court under 28 USC § 1391(e) and  5 U.S.C. § 702 because a substantial part of the events or omissions giving rise to the claims occurred here in Nye County, Nevada, the proposed facility is to be located here, and several of the Plaintiffs and Defendant  s are based here.

**IV. STATEMENT OF FACTS**

13.  On July 15, 2004, during a period of peak real estate values, United Holdings Corp. purchased 2250 E. Mesquite from Bruce M. Patterson and Ann Patterson Stahl for the purchase price of $1,200,000 [Exh 3].

14.  On November 21, 2006, the Department of Interior, Fish and Wildlife Service, published in the Federal Register, Vol. 71, No. 224, page 67363, a Notice of Intent that:

"advises the public that we intend to gather information necessary to prepare an Environmental Impact Statement (EIS) regarding the proposed Southern Nye County Multiple Species Habitat Conservation Plan (MSHCP) and issuance of an

incidental take permit (Permit) for endangered and threatened species in accordance with section 210(a)(1)(B) of the Endangered Species Act of 1973, as amended (Act)."

This Notice mentioned Nye County [P. 67364, col. 1, para. 1] but made no mention of plans to build a prison or detention center. [Exh 4]

15. On June 5, 2007 a letter was sent from the Louis Berger Group, consultants of Defendant  OFDT, regarding "Notice of a Public Scoping Meeting to Initiate the Environmental Impact Statement Process" [Exh 5]. The announcement made no mention that a detention center was planning to be built in Pahrump.

16. On June 7, 2007 Defendant  OFDT published a Notice in the Federal Register, Vol. 72, No. 109, page 31606, that a Las Vegas area detention center was to be considered that included the site at 2250 Mesquite Ave., and stated that a public scoping meeting would be held at a date, place and time to be announced. [Exh 6]

17. On Friday, June 15, 2007, the Pahrump Valley Times ("PVT") published a notice regarding a Tuesday, June 19, 2007 meeting. The 2-day notice also made no mention that a detention center was planning to be built in Pahrump. [Exh 7]

18. No other form of announcement was made in Nye County in regard to this scoping meeting.

19. On June 19, 2007 a "Public Scoping Meeting Concerning the Draft Environmental Impact Statement Process for Proposed Contractor Detention Facility, Las Vegas, Nevada Area" was presented by U.S. Department of Justice, Defendant OFDT. Per the sign-in sheet, 17 persons attended, including 7 government officials (there are more government officials in the transcript), 1 news reporter. Maximum number of residents signed in is 9. An additional 5 government officials and 1 resident spoke at the meeting. [Exh 8, Transcript]

20. Upon information and belief, the participants were, with a sole exception, government officials and/or members of Defendant PAVED. Defendant OFDT and Defendant CCA have been speaking with our public officials since November 2006 [Exh 8, Transcript, p.8]. Al Balloqui, Chair of Defendant PAVED, stated that he had been involved since January 7, 2007, during which time he had already had 18 meetings [Exh 8, Transcript, p.27]. Those 18 meetings were not noticed meetings. Defendant OFDT states that the "process, really, with the public begins tonight" [Exh 8, Transcript, p.9]. The only citizen who had come to the

meeting because she had seen the advertisement in the PVT, Anne Bousquet had commented that the public was not present. [Exh 8, Transcript, pp. 30-31] Defendant  OFDT replies, ". . . remember this.  It's the first kick-off meeting.  We will have more meetings." [Exh 8, Transcript, p.31]

21. Prior to this first "kick-off" meeting, the BOCC had already removed a 50,000 foot (9.5 mile) restriction prohibiting building a prison within 9.5 miles of a residence.  Prior to this first "kick-off" meeting, the BOCC had already created a new zone, Community Facilities, to allow the prison on E. Mesquite.  Uninformed, the public had not yet even attended the first Scoping Meeting.

22. On July 11, 2007, the Nye County Regional Planning Commission heard a request for a zone change for the E. Mesquite property to Community Facilities.  On July 18, 2007, the BOCC approved the zone change.  [Exh 9]

23. On December 13, 2007, the Louis Berger Group forwarded the Draft Environmental Impact Statement ("DEIS").  This correspondence was sent to only 32 people in Pahrump, of which 24 were government officials and 2 were news reporters, leaving a possible 6 residents noticed. [Exh 10]

24. On December 21, 2007, the Environmental Protection Agency published a Notice of Availability of the DEIS in the

Federal Register, Vol. 72, No. 245, page 72707.  The Notice described the location as "Las Vegas Detention Facility" without mention of Pahrump, Nye County, or Mesquite Avenue. [Exh 11].

25. Notice in the PVT stated that the DEIS would be reviewed for a 45 day period.

26. Between January and February 2008, Defendant  OFDT stated the preferred site is 2250 E. Mesquite (in responses to 36 of 38 documents containing over 130 separate letters).  [Exh 12, Final Environmental Impact Statement ("FEIS"), Sec. VIII, sample Docs. 1-3]

27. On January 9, 2008, Defendants CCA and OFDT were made aware that there is no water, no sewer and the water table is falling at the 2250 E. Mesquite site. [Exh 13, FEIS, Sec. VIII, Doc. 3]

28. On January 16, 2008, a PVT article announced "Detention center hearing set for tomorrow evening" and the hearing was held on January 17, 2008.  Review period for the DEIS ended on February 4, 2008.   [Exh 14]

29. On January 17, 2008, a second scoping meeting was held at which few attended other than the carefully selected government invitees.  There is no sign-in sheet attached to the transcript; a review of the speakers from the audience

11

indicates there were six speakers.  All six speakers were
members of Defendant   PAVED.  Even so, support was not
unanimous as Mr. Dave Stevens stated, "You talk about
environment.  It will bring environment all right, the wrong
kind of environment." [Exh 15]

30. On January 29, 2008, the U.S. Environmental Protection
Agency notified Defendant   OFDT that it had rated its DEIS
as ED-2, Environmental Concerns – Insufficient Information.
Nova Blajez, Manager of the Environmental Review Office
wrote:  "We are concerned about the potential impacts of the
proposed project on water resources and air quality."  After
criticizing the findings regarding the jurisdiction over
ephemeral waters, Blajez noted:

> "EPA is concerned about the general uncertainty of
> the water supply for this project. For the two
> sites located within Pahrump, Nevada, the EIS
> states that the potable water supply service and
> wastewater collection service is currently
> unavailable, although service could be provided by
> extending a water main and wastewater collection
> line to the selected site. The majority of surface
> water resources within Nye County have already
> been appropriated and existing groundwater
> allocations exceed the perennial yield of the
> Pahrump Basin. Based on recent projections, a
> shortfall of 65,000 to 61,000 acre-feet per year
> is projected by the year 2050." [Exh 16, FEIS,
> Section VIII, Document 30].

31. On March 14, 2008, Defendant CCA recorded a Memorandum
of Right to Purchase the 2250 E. Mesquite location.  No

12

other proposed location had such a Memorandum attached to it. [Exh 17]

32. On March 27, 2008, the Pahrump Mirror's front-page headline read: "Detention center headed to Pahrump. Facility to be built on Mesquite Ave." [Exh 18]

33. On March 28, 2008, the Environmental Protection Agency published a Notice of Availability of the Final Environmental Impact Statement ("FEIS") and began a 30-day review. Federal Register, Vol. 73, No. 61, page 16672. Again, it described the site as a "Las Vegas Detention Facility" and made no mention of Pahrump or of Nye County, Nevada. [Exh 19].

34. Notice was given in the PVT, and on April 28, 2008, the review period ended.

35. One hundred (100) form letters dated January 14, 2008 from Pahrump citizens were received. Sixty-seven (67) of these were in favor of a different site and the other thirty three (33) did not specify a site. Not one letter requested the 2250 E. Mesquite location. [Exh 20, FEIS, Sec. VIII, Docs. 11-12, sample letter]

36. On May 22, 2008, the Department of Justice published in the Federal Register, Vol. 73, No. 100, page 29780, a "Notice of the Availability of the Record of Decision

Concerning a Proposal to Award a Contract to House Federal Detainees Within a Contractor-Owned/Contractor-Operated Detention Facility in the Las Vegas, NV, Area". This Notice, the first to denote that the 2250 Mesquite Ave. location was the "agency preferred alternative", published as a Notice, not a proposed Rule, did not provide for Comment. [Exh 21] This Notice relied on the previously published Notices of Environmental Impact Statements:

> A Draft EIS was issued on December 23, 2007, coinciding with publication of the Notice of Availability (NOA) in the Federal Register (72 FR 72707). The NOA provided for a 45-day public comment period which began on December 23, 2007, and ended on February 4, 2008 . . . .

37. The proposed site lies within one mile of approximately 35 residences, and within three miles of about 100 residences. [Exh 22, Decl. Jeff Bobeck and aerial photographs 1-3]

38. On May 14, 2008, the Nye County Regional Planning Commission split the 160 acre E. Mesquite location into 2 parcels of approximately 120 acres and 40 acres. [Exh 23, Agenda Item 17]

14

39. On May 16, 2008, a PVT front-page headline reads: "It's Official. Detention Center is on the Way" [Exh 24] It was not, however, "official" as the Development Agreement had not yet been submitted by Defendant CCA.

40. On May 19, 2008, Defendant CCA secured the contract from Defendant OFDT to build on the "agency preferred alternative", i.e., the East Mesquite location [Exh 25]. This was clearly to be a detention center to hold federal pre-trial detainees and pre-immigration hearing undocumented aliens.

41. The next day, Defendant CCA put out a press release announcing that Defendant CCA will be building a "1072-bed prison" in Pahrump [Exh 26]. However, per the Development Agreement, a 1,500 bed facility is to be constructed.

42. On July 1, 2008, during a down-turned real estate market, Defendant CCA purchased from John Hui, principal of United Holdings Corp., the above-mentioned 120 acre parcel (no. 027-421-05, formerly part of no. 027-421-10) for $6,990,000, and the address was changed to 2190 East Mesquite Ave. [Exh 27] The site still has no water, no sewer, no electricity, is located in close

proximity to an airport and the town dump and all of the heavy equipment therein, and within the habitat for the desert tortoise.

43. There were other sites available far more suited for a detention center. There were sites outside of town and closer to Las Vegas. There were sites on Route 95, or Nellis. There were sites that were owned by the town or the county, which would have brought profit to the town or county, rather than to an individual seller. The Jean, Nevada prison site was available and would have been an excellent choice and far more expedient. The Jean site has water, sewer, electric; it is near an easily accessible highway; it is closer to Las Vegas and it is ready to be filled with prisoners.

44. On August 19, 2008, there was a meeting of Defendant PAVED with Defendant CCA representatives. Approximately 90 people attended the meeting, the majority of whom was opposed to the prison siting.

45. On August 20, 2008 Defendant BOCC held a meeting to set a date, time and location for a public hearing on the proposed Development Agreement. [Exh 28]

46. This public hearing was scheduled for and held on September 16, 2008 at the Ruud Center, which was filled

16

to overflowing its 350 person capacity. People were turned away. The overwhelming majority was clearly against the building of the prison. During the meeting Commissioner Eastley stated: It's a "done deal." Additionally, the Agenda backup shows that the Commissioners have all voted in favor of the Development Agreement, even though neither a motion nor a vote has yet been made. The BOCC continued the public hearing to October 21, 2008. [Exh 29]

47. On October 21, 2008 the BOCC public hearing regarding the proposed Development Agreement was continued from September 16, 2008. The public again filled the Ruud Center to maximum capacity of 350 persons. The overwhelming majority was once again against the prison. Commissioner Eastley again stated "It's a done deal." Defendant BOCC did not have an updated Development Agreement and continued the public hearing to December 16, 2008. [Exh 30]

48. A continued BOCC public hearing and possible vote on the Development Agreement was held on December 16, 2008. After two months, the Development Agreement was still in draft form with only one of eight Exhibits attached. Changes, some substantive, were made orally

17

only for about one and a half hours of continuous changes only with no discussion. Again, the public was informed that comments were only to be directed to the terms of the Development Agreement because the question as to whether or not to permit the building of the federal detention facility was already decided. In spite of massive public outcry, Defendant BOCC voted unanimously to approve the Development Agreement which was effectuated on January 5, 2009. [Exh 31]

49. It is well known that water is scarce in the desert and the Pahrump water table is dropping. There is no water at the site, as required by the EIS. The utility company has petitioned the Public Utility Commission of Nevada ("PUC") to extend its tariff area. There is still no agreement between the utility company and Defendant CCA for water.

50. There are no sewers at the site. The utility company does not have the right to provide sewer in this area. It has applied to the PUC to expand its tariff area. No public hearings have been held on this issue. There is still no agreement between the utility company and Defendant CCA for sewer.

51.  The proposed sewer lines were to deliver sewage to Plant #3 on the Willow Creek Golf Course.  However, this property has since been sold to a new owner with no obligation to accept the sewage.  Effluent with extremely high levels of E. Coli was found and Nye County shut the sewer facility down.

52.  The FEIS states that water and sewer are unavailable at the E. Mesquite site and that water and sewer must be ensured before issuing a contract.  [Exh 16, FEIS, Sec. VIII, p.189, para. 7]  Nothing in Defendant  OFDT's Record of Decision guarantees or ensures sewer and water.

> The facility will rely on public utility providers for water supply, wastewater collection and treatment . . . .  There are no plans to develop on-site water supply or wastewater treatment systems to serve the needs of the proposed facility.

[Exh 32, p.6]  Water and sewer are not ensured.

53.  No public hearings have been held by the PUC to extend their tariff area.

54.  The FEIS on Defendant CCA's facility fails to analyze adequately or take a hard look at the likely impacts on the desert tortoise, burrowing owl, and their habitats, and moreover the effect on the yucca plant.  The Biological Opinion from U.S. Fish & Wildlife requires

only $51,957 remediation and a fence around the area before grading, and allows a kill of possibly "only two" threatened desert tortoises. There is no agreement by Defendant CCA to implement the Reasonable and Prudent Measures set forth in the Biological Opinion. [Exh 33]

55. The FEIS ignores the numerous individually prepared letters pointing out problems with the project [Exh 33, FEIS, Exh VII-1, Docs 13-19] and instead relies upon the sixty seven (67) form letters signed by members of Defendant PAVED in favor of a different location. [Exh 33, FEIS, Exh VII-1, Doc. 11, 12].

56. On June 26, 2007, after Defendant PAVED held its meeting of carefully selected invitees, without public notice of any sort, Defendant BOCC held a meeting for "Discussion, deliberation, and possible review of the sites selected for possible location of a detention facility in Pahrump" and distributed copies of the material "distributed by the Trustee" for the purported scoping meeting held on June 19, 2007 by Defendant PAVED. [Exh 34].

57. On September 11, 2007 the Town Board of Pahrump voted Defendant PAVED as its "Official Economic Development

Organization." [sic, Exh 35].   Prior to that date and at the time of the "scoping" meeting, Defendant PAVED had no state, county or town recognition whatsoever.

58. No open and public meeting was held by Defendant BOCC to make the important decision to abdicate its responsibility to Defendant PAVED which acted in concert with Defendant OFDT and the full knowledge of Defendant CCA in regards to the NEPA scoping process, 40 CFR 1501.7, 1506.6.

59. Had the NEPA process, including but not limited to scoping, been properly conducted, Defendant BOCC could have learned from the citizens of Pahrump prior to signing the Development Agreement that Defendant CCA's current involvement with federal facilities is limited to managing two low security federal facilities.

60. Had the NEPA process, including but not limited to scoping, been properly conducted, Defendant BOCC could have learned from the citizens of Pahrump that all FDC's and MDC's, which hold a much more dangerous and volatile inmate population, are managed by the Bureau of Prisons.   The contracting out of this dangerous function is a first for Defendant OFDT and there is

21

only one other FDC that is in other than a metropolitan location. [Exh 36]

61. There is no electricity at the site. The electric utility, at a recent meeting with the residents of Pahrump, stated that it would be a "strain" on the company to provide sufficient electric power to the prison given the electric company's current infrastructure. The Development Agreement does not but must address this problem. The people of Pahrump, a declining population, have been advised by the electric coop that the cost of service will be rising to provide infrastructure. Residents will be charged an additional 8.5% on their bills. The question as to who will pay for the new infrastructure has not been addressed.

62. Pahrump is a country town. The citizens enjoy the starlight and the moon rising. Defendant CCA has chosen a location high up on the fan overlooking the homes of the Pahrump Valley. The prison, because it is high on the fan and in our town area, will be seen by almost every home in the Valley. And the lights at night will be unbearable for residents and the

visibility of the stars will be greatly obstructed and encumbered to area residents.

63. The area is close enough to local residences, and even a private airport, that it could facilitate the escape of prisoners, allegedly detainees to be deported with little incentive to proceed through their deportation proceedings, which could place Pahrump residents in grave danger.

64. The landfill is diagonally across from the proposed site and handles hazardous waste. There is a possibility of hazardous spills at the landfill. The landfill operators have not been required to acknowledge in writing the status of any hazardous spills prior to the Commissioners signing the Development Agreement because it may affect the Development Agreement and the construction schedule. The landfill has heavy equipment which could easily be stolen and driven into the prison fences.

65. Defendants OFDT, CCA, BOCC and PAVED ignore the considerable research of which they are aware, for example the more recent Washington State University's 26-year analysis by Professor Greg Hooks, which indicates that the presence of a prison in this rural

area will actually contribute to economic stagnation. Defendant OFDT had listened to a talk by Professor Hooks and was, therefore, aware that the economic studies used in the FEIS were outdated and disproved by more recent studies.

66. Defendants CCA, BOCC and PAVED equate payments for utility services with profits for the County, another unfounded assumption. They assume there will be significant purchase of goods and services from local suppliers. In fact, as a chief selling point to various contracting agencies and bond sellers, the industry brags that it is able to operate efficiently by dealing with centralized purchasing through national, rather than local or even statewide providers. They simply can't have it both ways. They also assume that employment opportunities will favor Nye County. In fact, Defendant CCA is well aware that in its facilities, sited in depressed towns such as Olney Springs, it draws the majority of its employees from commuters from Pueblo, Colorado. Defendant OFDT may not have known this, but it should have at least challenged that assumption with some observable fact.

24

67. On December 16, 2008, after being served and notified of the Court hearing re injunction scheduled for December 23, 2008, Defendant BOCC nevertheless voted unanimously to approve the Development Agreement which was to go into effect on January 5, 2009.

68. The privatization of a detention facility for pre-trial detainees was described as "new territory" or going into a new area by representatives of the federal government.   The experimental basis of this facility was never publicized in any of the above notices and meetings.

69. Nye County Code 17.04.700.A.14.e, stated: "The facility [correctional facility] must be located at least fifty thousand (50,000) feet from a residential district." Defendant BOCC voted to approve Bill 2007-07, which removed this 50,000 ft (9.5 mile) requirement from the Code on April 18, 2007 so that a prison can now be built in proximity to any and all residences. Defendant BOCC contemporaneously created and approved a new zone category of Community Facilities ("CF").

70. The Nye County Code Sec. 17.04.120 mandates that zoning districts be established by structure height and it is not certain whether the facility will be 40 feet or

higher.  The  Nye  County  Code,  section  17.04.750.5
states:  "For  sites  five  or  more  acres,  the  maximum
height  of  a  light  pole,  measured  from  the  finished
grade  to  the  top  of  the  pole,  shall  be  30  feet."  The
Development  Agreement  calls  for  lighting  at  35  feet.
Defendant  BOCC  should  have  been  required  to  review  this
inconsistency  and  amend  the  Code,  if  necessary,  prior
to  signing  the  Development  Agreement.

71.  The  Nye  County  Fire  Department  is  not  prepared  to  fight
a  fire  in  a  40'  structure.  They  have  no  equipment  that
will  reach  that  high.

72.  In  addition,  there  are  burrowing  owls  that  nest  in  the
area.

73.  The  Yucca  in  the  area  have  not  been  taken  into
consideration.  They  are  protected  plants.

74.  Upon  information  and  belief,  employees  of  two  local
businesses  and  senior  citizens  were  offered  a  free
lunch  for  appearing  at  that  hearing  and  wearing  "YES"
buttons,  and  were  placed  at  the  front  of  the  room.
Those  persons  who  were  against  the  building  of  the
detention  center  were  relegated  a  separate  room  in  the
back  from  which  their  applause  or  other  expression
could  not  be  heard  in  the  main  room.

26

**COUNT I**

**Violation of the Administrative Procedures Act and the
National Environmental Policy Act (NEPA)
(CCA and OFDT)**

75. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

76. NEPA is the "basic national charter for protection of the environment." 40 C.F.R. § 1500.1. Among other things, NEPA requires all agencies of the federal government to prepare a "detailed statement" that discusses the environmental impacts of, and reasonable alternatives to, all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)( c). This statement is commonly known as an Environmental Impact Statement ("EIS").

77. Here, Defendant CCA while ostensibly a private organization is to perform the functions regularly performed by the Bureau of Prisons, a federal agency, and it did not comply with 42 U.S.C. § 4332(2) © but

27

instead relied upon the insufficient notices published by Defendant OFDT. The single notice in the Federal Register that stated that a prison or detention facility would possibly be built in Pahrump, Nye County, Nevada was the Record of Decision published after the period for public comment had expired. The notice of the Scoping meeting failed to provide notice that one of the proposed sites for the Las Vegas area detention facility was in Pahrump. [Exh 6, June 7, 2007 Notice]

78. Following the June 7, 2007 Notice, until the Notice of Record of Decision of May 22, 2008, the notices as to the DEIS and FEIS stated "Las Vegas Area Detention Center" and failed to inform the public that the detention center was to be built in Pahrump, NV.

79. At the time it was disclosed, as Record of Decision in May 2008, it was too late for citizens to comment.

80. Defendant BOCC abdicated its responsibility in regards to public notice to Defendant PAVED, which, while ostensibly a private group, was in fact created at the direction of the Town Board for the purpose of holding scoping meetings disingenuously designed to appear as if public comment was being sought. Defendant PAVED

assisted and acted in concerted action with Defendants CCA, OFDT and BOCC to foist the detention center on an unwilling public before they were aware that it was being done.

81. The abdication of the responsibility of Defendant BOCC to Defendant PAVED was done at a time and place unknown to Plaintiffs and without any public and open meeting as required by NRS 241.200 and in a deliberate scheme to circumvent the requirements of the statute that is required to be followed under NEPA pursuant to 40 C.F.R. §§ 1506.6(a)(3)(B)(iii).

82. The notices published by Defendant OFDT and the Environmental Protection Agency on this matter failed to provide interested persons an opportunity to participate in the rule making required under NEPA.

83. Defendant CCA, as a federal actor in that the Development Agreement requires that it perform the functions normally designated to the Bureau of Prisons, had an equal responsibility along with Defendant OFDT to assure that the NEPA process was properly conducted prior to breaking ground on the proposed site.

84. The EIS process is intended "to help public officials make decisions that are based on understanding of

environmental consequences" and to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. § 1500.1(b)-( c)

85. NEPA requires that an EIS analyze "direct effects," which are "caused by the action and occur at the same time and place," as well as "indirect effects which . . . are later in time or farther removed in distance, but are still reasonably foreseeable." 40 C.F.R. § 1508.8.

86. Defendants CCA, OFDT and BOCC, by abdicating the scoping process to Defendant PAVED, which did not issue the public notices required under NRS 241.200 failed entirely to: (a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures; (b) Provide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected.

87. Defendants CCA, OFDT and BOCC, by abdicating the scoping process to Defendant PAVED, which did not issue the public notices required under NRS 241.200 failed entirely to follow the affected State's public notice procedures for comparable actions; publish in local

newspapers; notice through other local media; notice to
potentially interested community organizations
including small business associations; publish in
newsletters that may be expected to reach potentially
interested persons; direct mail to owners and occupants
of nearby or affected property; posting of notice on
and off site in the area where the action is to be
located; hold or sponsor public hearings or public
meetings whenever appropriate or in accordance with
statutory requirements applicable to the agency;
solicit appropriate information from the public;
explain in its procedures where interested persons can
get information or status reports on environmental
impact statements and other elements of the NEPA
process; make environmental impact statements, the
comments received, and any underlying documents
available to the public pursuant to the provisions of
the Freedom of Information Act (5 U.S.C. 552), make
materials to be made available to the public without
charge to the extent practicable. 40 CFR 1506.6.

88. Defendants CCA, OFDT and BOCC, by abdicating the
scoping process to Defendant PAVED, failed entirely to
provide that there was an early and open process for

31

determining the scope of issues to be addressed and for identifying the significant issues related to a proposed action, the process termed scoping.

89. Defendants CCA, OFDT and BOCC, by abdicating the scoping process to Defendant PAVED, lost the opportunity that the scoping process provided to identify the significant issues related to the proposed action that the public would have brought to the attention of Defendant OFDT. One such significant issue is that the contracting out of this dangerous function is a first for Defendant OFDT and that there is only one other FDC that is in other than a metropolitan location. [Exh 36]

90. The Notice Of Intent (40 CFR § 1508.22) in the Federal Register did not provide information as to when and where the scoping meeting was to be held as provided in § 1507.3(e).

91. Defendants CCA, OFDT and BOCC, by abdicating the scoping process to Defendant PAVED, failed in their entirety to: invite the participation of affected federal, state, and local agencies, any affected Indian tribe, the proponent of the action, and other interested persons (including those who might not be in

accord with the action on environmental grounds), unless there is a limited exception under § 1507.3 ©. 40 CFR 1501.7.

92. Defendants CCA, OFDT and BOCC, by abdicating the scoping process to Defendant PAVED, failed in their entirety to hold an early scoping meeting or meetings which may be integrated with any other early planning meeting the agency has; revise the determinations made if substantial changes are made later in the proposed action, or if significant new circumstances or information arise which bear on the proposal or its impacts. 40 CFR 1501.7

**Count II**
**Violation of the Due Process Clause**
**of the U.S. Constitution Fifth and Fourteenth Amendments**
**(CCA, OFDT, Nye County, BOCC and PAVED)**

93. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

94. The notice provided by Defendant OFDT, for the benefit of Defendant CCA and upon which Defendant CCA relies, for the detention facility to be built by Defendant CCA was not "notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action."

33

95. The notice provided by Defendant PAVED, with the approval of Defendant BOCC, a newspaper advertisement for the scoping meeting that did not state that any proposed site for the Las Vegas area detention center was in Pahrump, was insufficient.

96. The notice was insufficient in law when the state is about to take action which would affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment.

**Count III**
**Violation of NRS 278.260 (2)**
**(Nye County and BOCC)**

97. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

98. A zoning regulation, restriction or boundary, or an amendment thereto, must not become effective until after transmittal of a copy of the relevant application to the town board, citizens' advisory council or town advisory board pursuant to subsection 5, if applicable, and after a public hearing at which parties in interest and other persons have an opportunity to be heard. The governing body shall cause notice of the time and place of the hearing to be:

34

(a) Published in an official newspaper, or a newspaper of general circulation, in the city, county or region;

(b) Mailed to each tenant of a mobile home park if that park is located within 300 feet of the property in question; and

. . . at least 10 days before the hearing.

99. In this case, the zoning commission denied the variance, and meetings were held on only one days notice to the public.

100. The decision of Defendant BOCC to over-rule the zoning commission was arbitrary and capricious.

**Count IV**
**Nuisance**
**(CCA, Nye County, BOCC and PAVED)**

101. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

102. The construction of the facility will be violation of the common law tort of public nuisance to the citizens of Pahrump, including but not limited to named Plaintiff, who will have to suffer 24 hour lighting, be deprived of the quiet and wild desert ambience in which

they chose to live, and will no longer see the great abundance stars at night.

103. The construction of the facility will be a violation of the common law tort of nuisance as the citizens of Pahrump, including but not limited to the named Plaintiffs, will be endangered by the possibility of escapees potentially armed with chemicals and equipment taken from the nearby town dump and possibly even flying in aircraft stolen from the airport that is also near the proposed facility.

104. The construction of the facility will violate the common law tort of nuisance as Pahrump citizens will be forced to observe numerous busses filled with prisoners traveling through its main road en route to this Honorable Court, 70 miles away from the location.

### Count V
### Violation of Nevada Open Meeting Law, NRS 241.020
### (Nye County, BOCC and PAVED)

105. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

106. The delegation by Defendant BOCC of the holding of the scoping meetings required under NEPA to Defendant PAVED, an ostensibly private organization that

36

performed as a County and Town Entity was made to avoid the Notice requirements of NRS 241.020.

107. The June 19, 2007 was not announced in a manner to assure adequate participation by Pahrump residents in that, *inter alia*, the advertisement in the Pahrump Valley Times did not state that any site for the proposed Las Vegas area detention facility was in Pahrump, Nevada or in Nye County.

108. The January 17, 2008 meeting was announced in the newspaper with only one day's notice to the public.

109. Upon information and belief, Defendant BOCC Chairwoman Joni Eastley announced at a recent meeting of the Republican Womens' Club that all of the Commissioners were going to vote in favor of the Development Agreement on December 16, 2008.

110. No meeting to determine these votes was announced.

111. The holding of the above meetings without 3 days notice to the public was arbitrary and capricious.

X

X

X

X

X

WHEREFORE, Plaintiffs accordingly pray for the following relief:

A.   A Declaratory Judgment that the contract between Defendant OFDT and CCA for the purpose of building and managing the "Las Vegas Area Detention Center" described above is null and void ab initio.

B.   A permanent injunction enjoining defendants, their agents, employees, assigns, and all persons acting in concert or participating with them from performing under the Development Agreement signed by the BOCC on January 8, 2009, including but not limited to making payments to CCA or transferring inmates to the CCA facility to be located at or about 2250 East Mesquite Ave., 2190 East Mesquite Ave., Pahrump, Nevada.

C.   A preliminary and permanent injunction enjoining Defendants, their agents, employees, assigns, and all persons acting in concert or participating with them from issuing permits or continuing construction of the subject of the Development Agreement, the CCA facility to be located at 2190 East Mesquite Ave., Pahrump, Nevada.

1         C.   Reasonable attorneys' fees and costs including but

2         not limited to those provided under the Equal Access to

3         Justice Act, 28 U.S.C. § 2412 et seq.

4         D.   Such other and further relief as this Court may

5

6         deem necessary and proper.

7    Dated this 13th day of August, 2009

8                           Respectfully submitted,

9                           S/nancylord/s

10                       _____

11                          Nancy Lord, M.D.
                            Nevada Bar No. 6697

12   Nancy Lord
     1970 N. Leslie Rd., No. 220

13   Pahrump, NV 89060
     775-751-3636

14   Attorney for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   CERTIFICATE OF SERVICE

2       I hereby certify that I caused a true and correct copy

3   to be served via CM/ECF pursuant to FRCP 5( c) to the

4   addresses listed by the attorneys for CCA, Nye County, and

5   
6   Board of Nye County Commissioners in the CM/ECF filing

7   system.

8   
9   Respectfully submitted

10  S/nancylord/s

11  
12  Nancy Lord

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    40